OPINION OF THE COURT
Chief Judge Wachtler.
For many years respondent Saul Birnbaum and his brother Bernard Birnbaum engaged in joint real estate enterprises. When Bernard died in 1976, a large portion of his real estate holdings passed to his children, Jay Birnbaum and llene Flaum, who are appellants here. An intermixture of familial and economic discord followed, however, between Saul on one side and Jay and llene on the other, eventually resulting in a great deal of litigation, of which this case is a small part.
The present dispute involves a shopping center in Cherry Hill, New Jersey, in which Saul has a 50% interest, and in which Jay and llene each have a. 25% interest, as tenants in common. This property was obtained in 1980 in exchange for another piece of property that had been owned by Saul and Bernard. Soon after acquisition of the . Cherry Hill property the tenants in common signed a partnership agreement, naming Saul and Jay managing partners, and requiring that all parties convey their interest in the property to the partnership. Due to conflict between the parties, however, Jay never took an active role in the management of the property, nor did Jay or llene convey their interests in the property to the partnership. Nevertheless, through the efforts of Saul the shopping center became an ostensibly profitable endeavor.
The operation and management of the shopping center was a subject of continuous dispute which led to the commencement of numerous actions in the various courts of this State. These actions were consolidated into what essentially became a single accounting proceeding in New York County. From the myriad allegations of the parties in that proceeding, a single issue meriting discussion has filtered its way to this court for review: whether Saul could hire Victoria Tree, who later became his wife, to help develop the property, and properly *465 charge her compensation amounting to hundreds of thousands of dollars to the property, without the consent of Jay and llene.
Victoria Tree is not a party in the present actions. The question presented here is whether Saul is entitled to charge Victoria’s compensation to the property; we do not have before us the question of whether Victoria is entitled to compensation from Saul personally.
The trial court, confirming a Referee’s report, concluded that Victoria’s compensation could not be charged to the property. It determined, initially, that Saul personally was not entitled to remuneration for his services in developing the property. The trial court then held that because the services attributed to Victoria were actually part of Saul’s fiduciary duty to Jay and llene, Victoria was also precluded from receiving compensation from the property, without the consent of Jay and llene. The Appellate Division left undisturbed the conclusion that Saul was not entitled to compensation. It reversed the trial court on the issue of payments to Victoria, however, reasoning simply that because Victoria did some work to benefit the property Saul was entitled to charge her compensation to the property. The Appellate Division then certified to this court the question of whether the Appellate Division’s order was properly made. We answer this question in the negative.
In the case now before us the lower courts declined to precisely categorize the interests of the parties as partners, joint venturers or tenants in common, although they did conclude that Saul occupied a fiduciary relationship with Jay and llene. Jay and llene argue here that Saul’s role as "patriarch” of the family, along with his duties as either a partner or a tenant in common in the Cherry Hill property gave rise to a fiduciary duty. In contrast, Saul maintains that a partnership exists, which is now in the process of winding up. Partners, however, and particularly managing partners, owe a fiduciary duty to the other partners (see, Meinhard v Salmon, 249 NY 458, 468). Consequently, even if we accept Saul’s characterization of the relationships operating here, the result is the same: he owed a fiduciary duty to Jay and llene to protect their interests in the Cherry Hill shopping center.
Saul’s financial transactions with Victoria violated his fiduciary duty to Jay and llene in two fundamental aspects. First, as a general proposition, absent an agreement to the *466 contrary, partners, joint venturers, and tenants in common look solely to the appreciation of their interest in the endeavor for their financial rewards, and are not entitled to separate compensation for services rendered (see, Levy v Leavitt, 257 NY 461, 467; Myers v Bolton, 157 NY 393, 399). Saul does not dispute the lower court’s determination that no agreement exists entitling him to compensation for the services he rendered, and thus, personally, he cannot be compensated for the services he provided. Moreover, the trial court’s finding, left undisturbed by the Appellate Division, was that the services that are attributed to Victoria are precisely those that Saul was obligated and expected to perform free of individual compensation. Under the facts of this case, Saul acted inconsistently with his obligation to protect the interests of Jay and llene, when he charged the property for services that he personally was obligated to perform without direct compensation.
Second, it is elemental that a fiduciary owes a duty of undivided and undiluted loyalty to those whose interests the fiduciary is to protect (e.g., Meinhard v Salmon, supra, at 463-464; Matter of Rothko, 43 NY2d 305, 319). This is a sensitive and "inflexible” rule of fidelity, barring not only blatant self-dealing, but also requiring avoidance of situations in which a fiduciary’s personal interest possibly conflicts with the interest of those owed a fiduciary duty (Matter of Ryan, 291 NY 376, 407). Included within this rule’s broad scope is every situation in which a fiduciary, who is bound to single-mindedly pursue the interests of those to whom a duty of loyalty is owed, deals with a person "in such close relation [to the fiduciary] * * * that possible advantage to such other person might * * * consciously or unconsciously” influence the fiduciary’s judgment (Albright v Jefferson County Natl. Bank, 292 NY 31, 39). In this case, Saul’s financial relationship with his wife conflicted with his duty to Jay and llene and therefore violated the precept of undiluted trust at the core of his responsibilities as a fiduciary.
For these two reasons, therefore, Saul’s actions charging the property for Victoria’s compensation were inconsistent with his fiduciary obligations, and as such constituted an alteration of his agreement with Jay and llene. Consequently, Saul’s departure from his basic obligations to Jay and llene cannot be countenanced by this court in the absence of both full disclosure and the assent of Jay and llene (see, Meinhard v Salmon, supra, at 467; see also, Phelan v Middle States Oil *467 Corp., 220 F2d 593, 603 [Hand, J.]; 2A Scott & Fratcher, Trusts § 170.25 [4th ed]). The trial court determined that there was neither disclosure nor assent, the Appellate Division did not disturb this conclusion, and, finding support in the record, we are bound also to accept this factual assessment (see, e.g., Alpert v 28 Williams St. Corp., 63 NY2d 557). Thus we conclude that the trial court properly held that Victoria’s compensation could not be charged to the property.
This is not to say, nor would we suggest that a person occupying a position of trust is barred from hiring employees (see, e.g., Partnership Law § 40 [2]). We only reaffirm here the most basic, principle that a court will not countenance the behavior of a fiduciary who, without full disclosure and consent, enters into a financial arrangement placing his spouse’s interests at odds with the interests of those to whom he owes a duty of undivided loyalty.
Saul argues, however, that in any event a conflict of interest on his part is essentially irrelevant, because Jay and llene breached the partnership agreement and thus are not entitled to share in the profits realized from the enterprise. Without passing on the validity of the rule of law Saul seeks to have applied here, neither the trial court nor the Appellate Division found a breach of a partnership agreement on the part of Jay and llene, and, in the record in this court, there is no basis to conclude that such a breach occurred.
We have examined the other issues raised by the parties, and, to the extent they are reviewable by us, we conclude that they were properly determined below.
Accordingly, the order should be modified, with costs to Jay Birnbaum and llene Flaum, by reinstating the judgment of Supreme Court, New York County, and, as so modified, affirmed. The certified question should be answered in the negative.
Judges Simons, Kaye, Alexander and Titone concur; Judges Hancock, Jr., and Bellacosa taking no part.
Order modified, and, as so modified, affirmed, etc.